United States Bankruptcy Court
Southern District of Texas
**ENTERED**
December 16, 2022
Nathan Ochsner, Clerk

## IN THE UNITED STATED BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## MCALLEN

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 17-70478** |
| **JAIME OMAR LUERA** | § | |
| **and** | § | |
| **CHRISTINA ISABEL PAZ,** | § | |
| | § | |
| **Debtors.** | § | |
| | § | |
| | § | **CHAPTER 13** |

## MEMORANDUM OPINION

The instant dispute is a strong reminder that "[t]he law ministers to the vigilant not to those who sleep upon perceptible rights."[1]  On the eve of discharge, an end of case battle has erupted between debtors Jamie Omar Luera and Christina Isabel Paz and creditor MidFirst Bank.  This dispute stems from an amended proof of claim filed by MidFirst Bank 899 days after the bar date and listing $4,140.74 in additional arrearages.  Curiously, Jamie Omar Luera and Christina Isabel Paz waited two more years after MidFirst Bank amended its proof of claim to bring the instant objection.  The debtors are now in month sixty of their sixty-month plan without having provisioned for the $4,140.74 in additional arrearages.  On November 22, 2022, the Court held a hearing and for the reasons stated herein, Jamie Omar Luera and Christina Isabel Paz's objection to MidFirst Bank's amended proof of claim are overruled and MidFirst Bank's amended proof of claim is allowed.

### I.     FINDINGS OF FACT

This Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, which is made applicable to adversary proceedings pursuant to Federal

---

[1] *Puleio v. Vose*, 830 F.2d 1197, 1203 (1st Cir.1987).

Rule of Bankruptcy Procedure 7052.  To the extent that any finding of fact constitutes a conclusion of law, it is adopted as such.  To the extent that any conclusion of law constitutes a finding of fact, it is adopted as such.  This Court made certain oral findings and conclusions on the record.  This Memorandum Opinion supplements those findings and conclusions.  If there is an inconsistency, this Memorandum Opinion controls.

## A.  Procedural History

1. On December 4, 2017 (the "*Petition Date*"), Jaime Omar Luera and Christina Isabel Paz ("*Debtors*") filed for bankruptcy protection under chapter 13 of the Bankruptcy Code[2] initiating the bankruptcy case.[3]

2. On December 6, 2017, two days after the filing of this bankruptcy proceeding, Amerihome Mortgage Company, LLC, ("*Amerihome*") advanced payments of $793.16 and $3,437.60 ($4,230.76) for the payment of the 2017 ad valorem taxes that were assessed against Debtors' home and primary residence located at 1600 Daffodile Avenue, McAllen, Texas 78501 (hereafter the "*Property*").[4]

3. On February 9, 2018, Amerihome filed a proof of claim in the total amount of $142,052.18 with pre-petition arrearages in the amount of $11,114.81 (the "*Original Proof of Claim*").[5] Nevertheless, the 2017 ad valorem tax advances were not included within the part 3 calculation of the Escrow Advance Balance.  The Proof of Claim asserted by Amerihome secures a lien granted in a deed of trust (the "*Deed of Trust*") executed on April 22, 2016 by Debtors, and which granted the holder of the note a lien on the Property.

4. On February 12, 2018, Debtors filed Schedule I which reflected that Mr. Luera was employed as a pawnbroker associate earning $2,433.17 per month plus (less allowed deductions) $1,573.00 in social security benefits and that Mrs. Paz was employed as a teacher at McAllen ISD earning $1,625.90 per month (less allowed deductions) for a combined monthly net income of $5,105.46.

5. On April 11, 2018, Debtors filed their fourth amended chapter 13 plan ("*Plan*") wherein Paragraph 8 of the Plan provisioned for $11,114.81 in pre-petition arrearages due to CENLAR, FSB the ("*Cure Claim*") in addition to the regular contractual monthly payments in the amount of $1,384.96[6]

---

[2] Any reference to "Code" or "Bankruptcy Code" is a reference to the United States Bankruptcy Code, 11 U.S.C., or any section (i.e.§) thereof refers to the corresponding section in 11 U.S.C.
[3] ECF No. 1.
[4] ECF No. 156 at 5, ¶ 10.
[5] Claim No. 11.
[6] ECF No 62 at 4, ¶ 8.

6.  On April 19, 2018, the Court confirmed the Plan.[7]

7.  On May 10, 2018, Amerihome filed a Notice of Payment Change ("*NPC*") increasing the escrow component from $698.40 to $751.75 for a total new monthly mortgage payment in the amount of $1,438.31.[8]

8.  On November 8, 2018, Amerihome filed a "Transfer of Claim Other Than for Security" transferring its claim to MidFirst Bank.[9]

9.  On April 30, 2019, MidFirst Bank filed an NPC increasing the escrow component from $751.75 to $815.64 for a total new monthly mortgage payment in the amount of $1,567.39.[10]

10. On July 30, 2020, MidFirst Bank filed an amended proof of claim in the total amount of $141,962.18 with arrearages in the amount of $15,255.55 consisting of $4,230.74 in projected escrow shortage and a monthly mortgage payment of $1,384.96 (the "*Amended Proof of Claim*").[11]

11. On June 29, 2021, MidFirst Bank filed an NPC increasing the escrow component from $791.67 to $883.72 for a new monthly mortgage payment in the amount of $1,570.28.[12]

12. On June 16, 2022, MidFirst Bank filed an NPC increasing the escrow component from $883.72 to $1,154.24 for a new monthly mortgage payment in the amount of $1,840.80.[13]

13. On August 16, 2022, two years later, Debtors filed their "Debtors' Objection To Proof Of Claim Of Midfirst Bank At Amended Claim No. 11"[14]

14. On September 12, 2022, MidFirst Bank filed their "Response of MidFirst Bank To Debtors Objection To Proof of Claim Of MidFirst Bank At Amended Claim No. 11."[15]

15. On September 22, 2022, Debtors filed their "Debtors' Amended Objection To Proof Of Claim Of Midfirst Bank at Amended Claim No. 11" ("*Claim Objection*").[16]

16. On November 18, 2022, MidFirst Bank filed its "Amended Response Of Midfirst Bank To Debtors' Amended Objection To Proof Of Claim Of Midfirst Bank At Amended Claim No. 11" ("*Response*").[17]

---

[7] ECF No. 63.
[8] ECF No. 67.
[9] ECF No. 72.
[10] ECF No. 74.
[11] Claim No. 11-2.
[12] ECF No. 82.
[13] ECF No. 122.
[14] ECF No. 142.
[15] ECF No. 148.
[16] ECF No. 151.
[17] ECF No. 156.

17. On November 22, 2022, the Court held a hearing.

## II.   CONCLUSIONS OF LAW

### A.  Jurisdiction and Venue

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334 and exercises its jurisdiction in accordance with Southern District of Texas General Order 2012–6.[18]  Section 157 allows a district court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein the latter court will appropriately preside over the matter.[19]  This court determines that pursuant to 28 U.S.C. § 157(b)(2)(A), (B) and (O) this proceeding contains core matters, as it primarily involves allowance of claims and proceedings concerning the administration of this estate.[20]  This proceeding is also core under the general "catch-all" language because such a suit is the type of proceeding that can only arise in the context of a bankruptcy case.[21]

Furthermore, this Court may only hear a case in which venue is proper.[22]  Pursuant to § 1409(a), "a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending."[23]  Debtors' chapter 13 case is presently pending in this Court and therefore, venue of this adversary proceeding is proper.

### B.  Constitutional Authority to Enter a Final Order

While bankruptcy judges can issue final orders and judgments for core proceedings, absent consent, they can only issue reports and recommendations on non-core matters.[24]  The pending

---

[18] *In re*: *Order of Reference to Bankruptcy Judges*, Gen. Order 2012–6 (S.D. Tex. May 24, 2012).
[19] 28 U.S.C. § 157(a); *see also* In re: Order of Reference to Bankruptcy Judges, Gen. Order 2012-6 (S.D. Tex. May 24, 2012).
[20] *See* 11 U.S.C. § 157(b)(2)(A),(B) & (O).
[21] *See Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.)*, 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under § 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.") (quoting *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir. 1987)).
[22] 28 U.S.C. § 1408.
[23] 28 U.S.C. § 1409(a).
[24] *See* 28 U.S.C. §§ 157(b)(1), (c)(1); *see also Stern v. Marshall*, 564 U.S. 462, 480 (2011); *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1938–40 (2015).

claim objection is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A),(B) and (O).  Accord-

ingly, this Court concludes that the narrow limitation imposed by *Stern* does not prohibit this Court

from entering a final order here.[25]  Alternatively, this Court has constitutional authority to enter a

final order because all parties in interest have consented, impliedly if not explicitly, to adjudication

of this dispute by this Court.[26]  None of these parties has ever objected to this Court's constitutional

authority to enter a final order or judgment.  These circumstances unquestionably constitute im-

plied consent.  Thus, this Court wields the constitutional authority to enter a final order here.

### III.    ANALYSIS

### A.  MidFirst Bank's Original Proof of Claim

In this case, the bar date for the filing of non-governmental proofs of claim was February

12, 2018.[27]  Prior to this deadline, on February 9, 2018, Amerihome filed its Original Proof of

Claim.[28]  Amerihome subsequently transferred the Original Proof of Claim to MidFirst Bank on

November 8, 2018.[29]  The Original Proof of Claim asserts a secured claim in the amount of

$142,052.18 including an arrearage amount of $11,114.81.[30]  Specifically, the arrearage consisted

of $5,492.48 in principal and interest, $2,136.79 in pre-petition fees, $2,272.98 in escrow defi-

ciency for funds advanced, and $1,212.56 in projected escrow shortages.[31]

---

[25] *See, e.g.*, *Badami v. Sears (In re AFY, Inc.),* 461 B.R. 541, 547-48 (8th Cir. BAP 2012) ("Unless and until the Supreme Court visits other provisions of Section 157(b)(2), we take the Supreme Court at its word and hold that the balance of the authority granted to bankruptcy judges by Congress in 28 U.S.C. § 157(b)(2) is constitutional."); *see also Tanguy v. West (In re Davis),* No. 00-50129, 538 F. App'x 440, 443 (5th Cir. 2013) ("[W]hile it is true that *Stern* invalidated 28 U.S.C. § 157(b)(2)(C) with respect to 'counterclaims by the estate against persons filing claims against the estate,' *Stern* expressly provides that its limited holding applies only in that 'one isolated respect' .... We decline to extend *Stern's* limited holding herein.") (citing *Stern*, 564 U.S. at 475, 503, 131 S.Ct. 2594).
[26] *Wellness Int'l Network, Ltd. v. Sharif,* 575 U.S.655, 135 S. Ct. 1932, 1947, 191 L.Ed.2d 911 (2015) ("*Sharif* contends that to the extent litigants may validly consent to adjudication by a bankruptcy court, such consent must be expressed. We disagree. Nothing in the Constitution requires that consent to adjudication by a bankruptcy court be express. Nor does the relevant statute, 28 U.S.C. § 157, mandate express consent . . . .").
[27] ECF No. 18.
[28] Claim No. 11-1.
[29] ECF No. 72.
[30] Claim No. 11-1.
[31] *Id.*

Section 502 provides that "a claim or interest, proof of which is filed under § 501 of this title, is deemed allowed, unless a party in interest . . . objects."[32]   The legislative history of § 502 provides in relevant part, that "a proof of claim or interest is prima facie evidence of the claim or interest. Thus, it is allowed under subsection (a) unless a party in interest objects."[33]   Here, no objection to the Original Proof of Claim was filed by any party.[34]   Thus, the Original Proof of Claim was allowed under § 502.

## B.  Debtors' chapter 13 plan

Debtors' Plan[35] was filed on April 11, 2018, and confirmed on April 19, 2018.[36]   The Plan provisioned, inter alia, for the exact amounts contained within MidFirst Bank's Original Proof of Claim[37] by providing a total claim in the amount of $142,052.18 with sixty on-going monthly mortgage payments in the amount of $1,394.86 (inclusive of principal and interest in the amount of $686.56 and an escrow component in the amount of $698.40) and an arrearage claim in the amount of $11,114.81 to be paid over the next fifty two months of the Plan.[38]

## C.  MidFirst Bank's Amended Proof of Claim

As stated above, no party objected to the Original Proof of Claim and it was thus allowed under § 502.  However, on July 30, 2020, in the thirty-first month of the Plan, MidFirst Bank filed its Amended Proof of Claim.[39]   Notably, this was 899 days after the bar date and 833 days after the Plan was confirmed.[40]   The Amended Proof of Claim asserts a secured claim in the amount of

---

[32] 11 U.S.C. § 502(a).
[33] House Rep. No. 95-595, 95th Cong., 1st Sess. 351 (1977); Senate Rep. No. 95-989, 95th Cong., 2d Sess. 62 (1978); *In re Northbelt, LLC*, 630 B.R. 228, 247 (Bankr. S.D. Tex. 2020).
[34] *See* Claims Register.
[35] ECF No. 62.
[36] ECF No. 63.
[37] Claim No. 11-1.
[38] ECF No. 62 at 4, ¶ 8.
[39] Claim No. 11-2.
[40] *Id.*

$141,962.18 including an arrearage amount of $15,255.55.[41]  The Amended Proof of Claim listed $4,140.74 in additional arrearages from the Original Proof of Claim.  Specifically, the arrearages in the Amended Proof of Claim consists of $5,492.48 in principal and interest, $2,046.79 in pre-petition fees, $2,272.98 in escrow deficiency for funds advanced, and $5,443.30 in projected escrow shortages.[42]

The reason for the change in the Amended Proof of Claim is due to MidFirst Bank discovering a calculation error in the projected escrow shortage in March 2020.[43]  As detailed above, the Original Proof of Claim was filed by Amerihome on February 9, 2018[44] and subsequently transferred to MidFirst Bank on November 8, 2018 in month eleven of the Plan.[45]  Despite Amerihome transferring the Original Proof of Claim to MidFirst Bank on November 8, 2018, it took MidFirst Bank sixteen additional months to discover an error in Amerihome's original calculation and twenty additional months to file the Amended Proof of Claim.[46]

The error can be traced back to payments of $793.16 and $3,437.60 (totaling $4,230.76) advanced by Amerihome for the payment of the 2017 ad valorem taxes that were assessed against the Property.[47]  Notably, these payments were made two days after Debtors filed for bankruptcy.[48]  Since the two tax advances occurred two days after the filing date, the 2017 ad valorem tax advances were not included within the part 3 calculation of the escrow advance balance as those payments had not been made prior to the filing date.[49]

---

[41] *Id.*
[42] *Id.*
[43] ECF No. 156 at 6, ¶ 13.
[44] Claim No. 11-1.
[45] ECF No. 72.
[46] ECF No. 156 at 6, ¶ 13.
[47] *Id.* at 5, ¶ 10.
[48] ECF No. 1.
[49] ECF No. 156 at 8, ¶ 16.

Nonetheless, an escrow analysis was included in the documentation filed with the Original Proof of Claim as required by Bankruptcy Rules of Procedure rule 3001(c)(2)(C).[50]  This escrow analysis projected that an additional projected escrow shortage would occur over the ensuing twelve months following the filing of the bankruptcy.[51]  That projected shortage of $1,212.56 was included in the Original Proof of Claim as the "Projected Escrow Shortage" in part 3 of the arrearage calculation set forth in the Official Form 410A Mortgage Proof of Claim Attachment.[52]  The Projected Escrow Shortage calculated the future shortage that would arise after the date of the filing of the bankruptcy petition over the ensuing twelve months.[53]

However, in calculating the Projected Escrow Shortage, Amerihome made an error when instead of applying a credit of $2,272.98 for the Escrow Advance Balance, Amerihome erroneously applied a projected credit of $7,076.16 to the escrow account.[54]  That projected credit was equivalent to the escrow portion of the eight delinquent mortgage payments that were due when this case was filed.[55]  This error caused the Original Proof of Claim to understate the Projected Escrow Shortage.[56]

MidFirst Bank has filed the Amended Proof of Claim to provide for what it deems as the correct calculation of the Projected Escrow Shortage.[57]  After applying a credit of $90.00 for a waived pre-petition fee to the arrearage total, the Projected Escrow Shortage has increased the arrearage amount from $11,114.81 in the Original Proof of Claim to $15,255.55 in the Amended Proof of Claim.[58]

---

[50] *Id.* at 5, ¶ 11.
[51] *Id.*
[52] *Id.*
[53] *Id.*
[54] *Id.*
[55] *Id.*
[56] *Id.*
[57] *Id.*
[58] *Id.*

**D. Debtors' objection to MidFirst Bank's Amended Proof of Claim**

On August 16, 2022, in month fifty-six of the Plan and over two years after the Amended Proof of Claim was filed, Debtors launched an objection to the Amended Proof of Claim.[59]  Subsequently, Debtors amended their objection on September 22, 2022 giving rise to the instant proceeding.[60]  In the Claim Objection filed on September 22, 2022, Debtors argue that MidFirst Bank should be "precluded from amending its claim over 2 years after confirmation and 2- ½ years after the bar date"[61] because (1) the amendment was improper; and (2) Bankruptcy Rule 3002.1(c) bars the increase in the projected escrow shortage included in the Amended Proof of Claim.[62]  The Court will consider each in turn.

**1.  Whether MidFirst Bank's Amended Proof of Claim was proper**

The Court of Appeals for the Fifth Circuit addressed a situation analogous to the case at bar in *In re Kolstad*.[63]  In *Kolstad*, a chapter 11 case, the Internal Revenue Service (IRS) did not file a proof of claim before the bar date ran.[64]  After the bar date had passed, the debtor filed a proof of claim in the amount of $20,359.71 on behalf of the IRS.[65]  Approximately ten months later, the IRS filed an "amended" proof of claim in the amount of $85,882.67.[66]  The debtor objected to the proof of claim filed by the IRS and argued that because the bar date had passed, the IRS lost the right to file a proof of claim for a higher amount.[67]

The Fifth Circuit disagreed with the debtor's position. In addressing the purpose of bar dates in bankruptcy, the Fifth Circuit held:

---

[59] ECF No. 142.
[60] ECF No. 151.
[61] *Id.* at 2.
[62] *Id.* at 3.
[63] *United States v. Kolstad (In re Kolstad)*, 928 F.2d 171 (5th Cir. 1991).
[64] *Id.*
[65] *Id.*
[66] *Id.*
[67] *Id.*

The deadlines have a purpose: they enable a debtor and his creditors to know, rea-sonably promptly, what parties are making claims against the estate and in what general amounts. The claims filing deadlines, however, by no means fix in stone the final 'allowed' amounts of claims. The proof of claim is prima facie evidence of the amount and origin of the debt owed, Bankruptcy Rule 3001(f), but any party in interest may object to a proof of claim. There is no bar date or deadline for filing objections. Once an objection is filed, the final amount of the claim is determined by litigation in an adversary proceeding. Such litigation may end in a settlement agreement providing for a compromise claim that, although it represents a bar-gained rather than actual amount of the debt owed, may pass muster with the cred-itors who have to approve it. Thus, while bar dates establish the universe of partic-ipants in the debtor's case, they have little correlation to the final relative amounts in which creditors will share any distribution. The goal of claims adjudication, on the other hand, is to assure that each creditor which is part of that universe ulti-mately participates in the voting and distribution from the estate in the proper amount determined by the priority and nature of its claim and bankruptcy's bar-gaining process.[68]

In the case at bar, there is no dispute that the Original Proof of Claim was timely filed and since no party raised an objection, the Original Proof of Claim was deemed allowed under 11 U.S.C. § 502(a).[69]  The question then becomes whether MidFirst Bank may amend its Original Proof of Claim on month thirty-one of Debtor's sixty-month Plan.  In *Kolstad*, the Fifth Circuit addressed the question of when amendments to timely filed proofs of claim should be permitted:

> Consistent with our view of the comparative roles of bar dates and claims adjudi-cation is the allowance of amended proofs of claim. Amendments to timely creditor proofs of claim have been liberally permitted to "cure a defect in the claim as orig-inally filed, to describe the claim with greater particularity or to plead a new theory of recovery on the facts set forth in the original claim."[70] Amendments do not vitiate the role of bar dates: indeed, courts that authorize amendments must ensure that corrections or adjustments do not set forth wholly new grounds of liability.[71]

In order to determine whether an amendment to a proof of claim is setting forth wholly new grounds of liability, the Fifth Circuit established a test for determining whether to permit an amendment to a proof of claim to be filed: (i) is the creditor attempting to stray beyond the

---

[68] *Id.* at 173-74.
[69] 11 U.S.C. § 502(a).
[70] *In re International Horizons, Inc.*, 751 F.2d at 1216.
[71] *In re Kolstad*, 928 F.2d at 175.

perimeters of the original proof of claim and effectively filing a new claim that could not have been foreseen from the earlier claim and (ii) the degree and incidence of prejudice, if any, caused by the creditor's delay.[72]  The court will consider each in turn.

### i. Whether MidFirst Bank is attempting to stray beyond the perimeters of the Original Proof of Claim

First, the Amended Proof of Claim clearly arises from the same deed of trust ("*Deed of Trust*") that gave rise to the Original Proof of Claim.  This Deed of Trust, dated April 22, 2016, is attached to both the Original Proof of Claim and the Amended Proof of Claim.[73]  Additionally, the Original Proof of Claim stated that the amount of its claim was $142,052.18[74] and the Amended Proof of Claim asserts a nearly identical amount of $141,962.18.[75]  The only difference is a $90.00 credit for a waived pre-petition fee and an increase in arrearages from $11,114.81 stated in the Original Proof of Claim to $15,255.55 in the Amended Proof of Claim.[76]  These additional arrearages are a result of an alleged erroneous credit in the Projected Escrow Shortage applied by Amerihome.[77]  The Amended Proof of Claim is merely attempting to correct a calculation error.

Thus, MidFirst Bank is not straying beyond the perimeters of the Original Proof of Claim.

### ii. The degree and incidence of prejudice, if any, caused by MidFirst Bank's delay

Next, as detailed above, in the thirty-first month of the Plan, 899 days after the bar date and 833 days after the Plan was confirmed, MidFirst Bank filed the Amended Proof of Claim seeking to adjust the escrow shortage resulting in $4,140.74 in additional arrearages.[78]  Debtors argue that they "have been significantly prejudiced by the very late filing of the proof of claim."[79]

---

[72] *Id.*
[73] See Claim Nos. 11-1;11-2.
[74] Claim No. 11-1.
[75] Claim No. 11-2.
[76] *Id.*
[77] ECF No. 156 at 6, ¶ 12.
[78] Claim No. 11-2.
[79] ECF No. 151 at 2.

Specifically, Debtors contend that the amendment to the claim materially affects the ability of the Debtors to complete their Plan.[80]

The major flaw in Debtors' reasoning, however, is that the alleged prejudice is largely self-imposed. After the filing of the Amended Proof of Claim, Debtors waited twenty-five months to file the Claim Objection.[81] Had Debtors begun to account for the additional arrearages and modify their Plan soon after the filing of the Amended Proof of Claim, Debtors could have had at least twenty-eight months remaining on their sixty-month Plan as opposed to the now final remaining month of December 2022.

As the Fifth Circuit noted in *Kolstad*, "[a]mendments to timely creditor proofs of claim have been liberally permitted to 'cure a defect in the claim as originally filed, to describe the claim with greater particularity or to plead a new theory of recovery on the facts set forth in the original claim.'"[82] Here, the purpose of MidFirst Bank's Amended Proof of Claim is to cure a defect in the Original Proof of Claim. Although MidFirst Bank could have been more proactive in filing the Amended Proof of Claim prior to the thirty-first month of the Plan, the resulting prejudice does not rise to a level in which the Court will stray from the liberal amendment standard. As discussed above, even with the Amened Proof of Claim filed in month thirty-one of the Plan, Debtors would have been well-positioned to account for the additional $4,140.74 in arrearages had they proactively filed a plan modification.

Thus, the Court finds that the prejudice suffered by Debtors was largely self-imposed and does not warrant disallowance of the Amended Proof of Claim. Since, the Court has also

---

[80] *Id.*
[81] Claim No. 11-2.
[82] *Id.* at 175 (quoting *In re International Horizons, Inc.*, 751 F.2d at 1216).

determined the Amended Proof of Claim relates back to the Original Proof of Claim, it is proper to allow the Amened Proof of Claim.

Accordingly, Debtors' first argument that the Amended Proof of Claim is improper is overruled.

### 2. Whether Bankruptcy Rule 3002.1(c) bars the increase in the projected escrow shortage included in the Amended Proof of Claim

Alternatively, in the Claim Objection, Debtors next argue that MidFirst Bank's Amended Proof of Claim is barred by Bankruptcy Rule 3002.1(c).[83]  This section provides that:

> (c) NOTICE OF FEES, EXPENSES, AND CHARGES. The holder of the claim shall file and serve on the debtor, debtor's counsel, and the trustee a notice itemizing all fees, expenses, or charges (1) that were incurred in connection with the claim after the bankruptcy case was filed, and (2) that the holder asserts are recoverable against the debtor or against the debtor's principal residence. The notice shall be served within 180 days after the date on which the fees, expenses, or charges are incurred.[84]

The basis of Debtors' second argument is that the change in the Amended Proof of Claim resulted from payment of taxes by Amerihome two days after the filing of the bankruptcy case.[85] Specifically, Amerihome advanced payments of $793.16 and $3,437.60 (totaling $4,230.76) for the 2017 ad valorem taxes that were assessed against the Property.[86]  Since the payments were made after the bankruptcy filing, Debtors contend that Amerihome, and later Midfirst Bank through transfer, were required to serve notice of an itemized list of these expenses within 180 days after in which the expenses were incurred ("*NPE*").[87]  Debtors argue that by failing to file this NPE, Midfirst Bank is now prohibited under Bankruptcy Rule 3002.1(c) from seeking recovery for these taxes in the Amended Proof of Claim.[88]  In its Response, MidFirst Bank argues that

---

[83] ECF No. 151 at 3.
[84] FED. R. BANKR. P. 3002(c)(1).
[85] ECF No. 151 at 3.
[86] ECF No. 156 at 5, ¶ 10.
[87] ECF No. 151 at 3.
[88] *Id.*

despite Amerihome paying the taxes two days after the filing of Debtors' bankruptcy case, these expenses were actually incurred prior to filing.[89]

In *In re Midland Industrial Service Corporation*, the Fifth Circuit analyzed Texas law to determine when a debtor's obligation to the local taxing authority accrued.[90]  In that case, the court noted that, under Texas law, a property owner's liability for taxes for any given year arises as of January 1 of that year regardless of when the tax is assessed.[91]  The owner of the property as of January 1 is personally obligated for the payment of all taxes ultimately imposed for the year, even if he subsequently conveys the property.[92]  The taxes, however, are generally not assessed until approximately October 1 of that year.[93]  Therefore, a debtor's obligation to pay such taxes accrues on January 1.[94]

In the present case, the Debtors filed their bankruptcy petition on December 4, 2017.[95]  As the Fifth Circuit made clear in *In re Midland Industrial Service Corporation*, under Texas law, liability for tax debt on property is incurred on January 1 of that calendar year.  Therefore, despite the fact that Amerihome advanced payments of $793.16 and $3,437.60 on December 6, 2017, the obligation had already accrued on January 1, 2017.  Notably, Bankruptcy Rule 3002.1(c) only applies to fees, expenses, or charges that were incurred in connection with the claim after the bankruptcy case was filed.[96]  Since the tax debt was incurred on January 1, 2017, this obligation was a pre-petition debt and not subject to the 180-day notice requirement in Bankruptcy Rule

---

[89] ECF No. 156 at 7-8, ¶ 16.
[90] *Midland Cent. Appraisal Dist. v. Midland Indus. Serv. Corp. (In re Midland Indus. Serv. Corp.)*, 35 F.3d 164, 166 (5th Cir. 1994).
[91] *Id.*; TEX. TAX CODE ANN. § 32.01 (a).
[92] TEX. TAX CODE ANN. § 32.07.
[93] *In re Midland Indus. Serv. Corp.*, 35 F.3d at 166.
[94] *Id.*
[95] ECF No. 1.
[96] FED. R. BANKR. P. 3002(c)(1).

3002.1(c). Thus, Debtors' argument that Bankruptcy Rule 3002.1(c) bars the additional arrearages in the Amended Proof of Claim is without merit.

      Accordingly, Debtors' second argument that the Amended Proof of Claim should be barred because Bankruptcy Rule 3002.1(c) bars the additional arrearages is overruled.

**IV.**   C<small>ONCLUSION</small>

      An Order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

      SIGNED December 16, 2022

Eduardo V. Rodriguez
Chief Judge
United States Bankruptcy Court
